# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANNIE J. MAGRUDER-MARTIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-11-115-JHP-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Annie J. Magruder-Martin requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on August 29, 1984, and was twenty-five years old at the time of the administrative hearing. She has a tenth grade education and past relevant work as a housekeeper, cleaner, laundry worker, and customer service clerk (Tr. 23, 33). The claimant alleges that she has been unable to work since June 26, 2005 because of a back injury and a L5-S1 fusion (Tr. 160).

**Procedural History**

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security insurance payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on August 4, 2008. The Commissioner denied his application. ALJ Eleanor T. Moser held an administrative hearing and determined that the claimant was not disabled in a written opinion dated December 2, 2009. The Appeals Council denied review, so this opinion is the Commissioner's final decision for purposes of appeal. 20 C.F.R. §§ 404.981; 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made her decision at step four of the sequential evaluation. She found that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b); 416.967(b) (Tr. 18). The ALJ concluded that the claimant was able to return to her past relevant work as a housekeeper, cleaner, laundry

worker, and customer service clerk (Tr. 23). Thus, the ALJ concluded that the claimant was not disabled at step four (Tr. 23).

**Review**

The claimant contends that the ALJ erred by failing to properly analyze the opinions of treating physician Dr. Jenkins regarding claimant's ability to bend, twist, and stoop. The undersigned finds that the ALJ erred by improperly picking and choosing among the medical evidence and failing to properly analyze the claimant's credibility.

The claimant injured her back while lifting a patient at a nursing home where she was working in June 2005 (Tr. 251). MRI results from July 2005 revealed that claimant had a very mild central disc bulge at L3-4, a large central disc herniation at L4-5, and a mild, central disc bulge at L5-S1 (Tr. 248). In August 2005, the claimant underwent posterior lumbar interbody fusion surgery at L4-5 (Tr. 252). Two months after surgery, the claimant was still complaining of low back pain with radiation into the right hip and leg and MRI results revealed post-surgical changes at L4-5 without evidence of complications, mild bilateral neural foraminal stenosis at L4-5, and degenerative disc disease at L3-4 and L5-S1 (Tr. 271). At her one year post-surgery follow up visit, the claimant reported walking two miles per day, increased low back and leg pain with increased activity, and an interest in gastric bypass surgery (Tr. 272). On February 20, 2007, claimant was still experiencing back pain, which she rated a five out of ten, and bilateral leg pain, but Dr. Mike Alvis, M.D. noted that he was "not sure we have anything else [to] offer her" (Tr. 274).

The claimant began receiving medical treatment from Dr. Thomas Trow, M.D. in May 2007 at the Family Health Center of Southern Oklahoma (Tr. 396). At that time, the claimant was noted to have chronic pain, failed low back surgery syndrome, morbid obesity, elevated blood pressure and nicotine dependence (Tr. 396). In October 2007, the claimant presented with complaints of hip pain (Tr. 393). However, on April 14, 2008, the claimant apparently became rude and belligerent with Dr. Trow's staff regarding an insurance and payment matter, and as a result of her behavior, the claimant was terminated from Dr. Trow's practice as a patient (Tr. 391). Dr. Trow did, however, submit a form entitled "Medical Assessment of Ability to do Work Related Activities (Physical)" on September 16, 2009 in which he offered the following opinions: i) claimant could sit upright for one hour in an eight hour work day; ii) stand for less than one hour in an eight hour work day; iii) walk for less than one hour in an eight hour work day; and iv) lift (but not repetitively) up to 20 pounds (Tr. 500). Dr. Trow also opined that claimant would be unable to work a full day and that "repetitive use of upper extremities as in pushing and pulling . . . quickly [would] refer pain through her shoulders into the muscles of her spine and back" (Tr. 500).

Following her termination from Dr. Trow's practice, the claimant began receiving pain management care from Dr. Harvey Jenkins, Ph.D., M.D. She regularly complained of high pain levels, ranging from 7-9 out of a 10, and she was prescribed Lortab, Soma, Voltaren Gel, and Ambien (Tr. 501-06). On March 3, 2009, the claimant described her pain as "almost intractable" and she was noted to have paraspinal muscular spasms,

irritability with hip range of motion, and trochanteric bursa tenderness (Tr. 504). On April 2, 2009, Dr. Jenkins noted that the claimant was having difficulty with bending, twisting, and lifting, and on May 4, 2009 and June 4, 2009, the claimant was having moderate spasms (Tr. 502-03).

The claimant's friend Felisa Frelich completed a Third Party Function Report in which she wrote that she lives with the claimant and helps her take care of herself and her children (Tr. 181). Ms. Frelich wrote that the claimant has difficulty with putting on pants and shoes, bathing, shaving, using the restroom, and cooking (Tr. 182-83). Regarding housework, Ms. Frelich wrote that claimant "seldomly can do housework [because] [s]he hurts too bad to do it" (Tr. 184). Ms. Frelich also wrote that claimant can "barely lift her 14 pound daughter," is only capable of walking to her mother's house three doors down, and can't climb stairs well (Tr. 186). Further, Ms. Frelich stated that claimant cannot bend or reach, can only stand for a short time, and has to take breaks when she starts doing things because of pain (Tr. 186).

The claimant contends that the ALJ erred by failing to properly consider the opinions of the her treating physician, Dr. Harvey Jenkins. Specifically, the claimant focuses on Dr. Jenkins's notations that claimant was suffering from "intractable pain" and having difficulty bending, twisting, and lifting (Tr. 504). Medical opinions from the claimant's treating physician are entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373

F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Even if a treating physician's opinions are not entitled to controlling weight, the ALJ must nevertheless determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. § 404.1527. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300. The pertinent factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01 [quotation marks omitted], *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). Finally, if the ALJ decides to reject a treating physician's opinion entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id.* at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300 [quotation omitted].

In this case, the ALJ did summarize Dr. Jenkins's treatment notes but omitted any discussion of his notations regarding the claimant's intractable pain and difficulty

bending, twisting, and lifting, which constitutes improper picking and choosing among the medical evidence. *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted]. Further, while the Commissioner argues that other examining sources contradict Dr. Jenkins's findings as the reason the ALJ failed to assign controlling weight to his opinion, the fact is that the ALJ wholly failed to discuss Dr. Jenkins's opinions regarding claimant's ability to bend, twist, and lift, and the court is not in a position to make post hoc findings on behalf of the ALJ. *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) ("The magistrate judge's (and appellee's) post hoc rationale is improper because it usurps the agency's function of weighing and balancing the evidence in the first instance. Judicial review is limited to the reasons stated in the ALJ's decision; the magistrate judge should not have supplied possible reasons for rejecting a physician's opinion in order to affirm.") [citations omitted]; *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) ("Affirming this post hoc effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process.").

In addition, deference must be given to an ALJ's credibility determination unless there is an indication that the ALJ misread the medical evidence taken as a whole.

*Casias v. Secretary of Health & Human Services,* 933 F.2d 799, 801 (10th Cir. 1991). Further, an ALJ may disregard a claimant's subjective complaints of pain if unsupported by any clinical findings. *Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4.

In discrediting the claimant in this case, the ALJ found that the claimant "exaggerated her testimony stating a friend has to take care of her baby, and she spends most of her time in a recliner" (Tr. 22). The ALJ also discredited the claimant for failing to comply with medical treatment because the claimant failed to stop smoking, lose weight, and diet or exercise (Tr. 22).

The first problem with the ALJ's credibility analysis is that she completely ignores the fact that Ms. Frelich, a friend of claimant who lives with her, completed a Third Party Function Report that corroborates all of claimant's testimony regarding her physical limitations, including the fact that claimant needs assistance with taking care of her baby. Social Security Ruling 06-3p (SSR 06-3p) provides the relevant guidelines for the ALJ to follow in evaluating "other source" opinions from non-medical sources who have not

seen the claimant in their professional capacity. *See* Soc. Sec. Rul. 06-3p, 2006 WL 2329939. SSR 06-3p states, in part, that non-medical opinion evidence, such as those from spouses, parents, friends, and neighbors, should be evaluated by considering the following factors: i) nature and extent of the relationship; ii) whether the evidence is consistent with other evidence; and iii) any other factors that tend to support or refute the evidence. Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *6. As mentioned, the ALJ wholly ignored the Third Party Function Report in this case, which is erroneous *especially* in light of the fact that Ms. Frelich's statement corroborates the claimant's testimony that the ALJ discredited as "exaggerated," *i. e.*, her testimony regarding her inability to care for her daughter without help.

Further, in reviewing the impact of a claimant's failure to follow medical treatment, *i. e.*, her failure to stop smoking, lose weight, and diet or exercise, the ALJ is supposed to follow a four part test: (i) whether treatment would have restored the claimant's ability to work; (ii) whether treatment was prescribed; (iii) whether treatment was refused; and, (iv) whether the excuse was justified. *Frey v. Bowen*, 816 F.2d 508 (10th Cir. 1987) at 517, *citing Weakley v. Heckler*, 795 F.2d 64, 66 (10th Cir. 1986), *quoting Teter v. Heckler*, 775 F.2d 1104, 1107 (10th Cir. 1985). In this case, the ALJ failed to discuss *any* of these factors in relation to his finding that claimant was noncompliant with medical treatment.

Because the ALJ failed to properly analyze the medical evidence of record and claimant's credibility as outlined above , the undersigned Magistrate Judge concludes that the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis. If the ALJ's subsequent analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

**Conclusion**

In summary, the undersigned Magistrate Judge PROPOSES a finding that correct legal standards were not applied and the decision of the Commissioner is therefore not supported by substantial evidence, and accordingly RECOMMENDS that the decision of the Commissioner be REVERSED and the case REMANDED to the ALJ for further proceedings consistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 12th day of September, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma